### WOOD v. POGUE, RECEIVER.

[No. 15,846. Filed February 10, 1937. Rehearing denied April 28, 1937. Transfer denied June 18, 1937.]

578

*Howard W. Mountz,* and *Theodore Wood,* for appellant.

*H. C. Spring, Edgar W. Atkinson, Maurice McClew,* and *Hugh G. Sanders,* for appellees.

CURTIS, J.—On March 25, 1927, in the Steuben Circuit Court, Mack Pogue was appointed receiver of the Angola Bank Trust Company, and three days later he employed the appellant as the general attorney in the administration of said trust. The appellant acted in that capacity from March 28, 1927, up to and including December 31, 1930, a period of approximately three years and nine months. The appellant resigned as such attorney due to the fact that he had been elected as Judge of the Appellate Court of this State and was, therefore, precluded from serving as such attorney after he became such Judge on January 1, 1931.

The assets of said receivership amounted to approximately $678,596.55 with liabilities amounting to $680,283.57. At the time of the resignation of the appellant said receivership was far along in its administration so that after said time said receiver paid out only the sum of $400.00 as attorney's fees to other attorneys covering the time from said resignation until the final report was filed in said receivership. The receiver was paid in all $13,000.00 for his services. Shortly before the resignation of said appellant he had a talk with Judge Clyde C. Carlin in whose court the receivership was pending in connection with allowance of additional attorney's fees to the appellant. Previously to the time the appellant and Judge Carlin had said conversation above referred

to he had been paid the sum of $4250.00 on account of said services and according to Judge Carlin he afterwards made an additional order for $1,000.00 making the following entry in vacation:

"September 27, 1930 in vacation.
Court now considers petitions filed by Mack Pogue, receiver and A. C. Wood, attorney, filed July 7, 1930. Receiver authorized to pay himself $1,000.00 on account of his services as receiver and A. C. Wood, $1,000.00 on account of his services as attorney for receiver."

The further evidence of Judge Carlin on that point is as follows:

"Some time after that (referring to the conversation between him and appellant as to additional fees) without saying anything to him about it I went in and wrote an order allowing him $1,000.00 on account of fees."

Before the final report in the receivership was filed the appellant herein filed his claim (which was later amended) in said receivership for the total sum of $13,000.00, $5,250.00 of which he acknowledged had previously been paid leaving a balance as alleged in the amended claim due the appellant of $7,750.00.

There were some few small expenses itemized in the amended claim which were allowed and no further notice need be given these items. Along with the amended claim the appellant filed an exhibit "A" in which detailed hours of services were set forth in the amount of thirteen hundred eight hours.

We set out pertinent allegations of the amended claim as follows: "That immediately after the appointment and qualification of said Receiver, and the employment of this claimant as attorney, they began the work of conserving, protecting and marshalling the assets of said Angola Bank Trust Company, and of determining and listing the liabilities thereof. That notice was given

to all creditors to present their claims, and pursuant to such notice many claims were filed with said receiver. That all of said claims had to be audited, investigated, set-offs taken into account, and such other steps taken as the circumstances demanded, to determine the correct amount actually due and owing to such claimants. That in many instances, hearings were had upon claims so filed, and at all of which hearings this claimant appeared for and represented said receiver.

"That shortly after the suspension of said Angola Bank Trust Company, said receiver commenced an action against the officers and directors of said banking institution to recover damages for the alleged negligence of the defendants named therein in the operation and management of said bank. That the facts forming the basis for said action were fully investigated by this claimant and said receiver, and the law and authorities pertaining to such actions briefed. That subsequently action was commenced against said officers and directors by other counsel. That said cause of action was, by order of said court, compromised and settled without trial, to the benefit of said receivership. That this claimant consulted with said receiver and said other counsel numerous times regarding the prosecution and settlement of said suit.

"That during the course of administering said receivership, it became necessary to levy and collect an assessment against the several stockholders of said bank upon the shares of capital stock owned by them. That some of said stockholders refused to pay said assessment, and denied their liability, and it became necessary to file suit therefor and to prosecute the same to judgment. That from the judgments so rendered, two of said stockholders, prosecuted separate appeals to the Appellate Court of Indiana. That said appeals were later transferred to the Supreme Court of Indiana, which said

court later affirmed the judgments theretofore rendered. That this claimant represented said receiver throughout said litigation over the collection of said stock assessments, which work included an intensive study of the law relative to the rights of a receiver to prosecute such an action, and also relative to the liability of the stockholders of the capital stock of a loan, trust and safe deposit company; and included the preparation of briefs for said receiver as appellee, and briefs in reply to the briefs prepared and filed by said appellants and each of them.

"That in addition thereto said claimant represented said receiver in all litigation of whatsoever kind or character upon request of said receiver. That because of the varied character of the assets in the hands of said receiver, and the inability to collect upon the same without suit, this claimant prepared, filed and prosecuted to final judgment or settlement numerous causes of action in the circuit courts of Steuben, LaGrange, Noble and DeKalb Counties. That many of said persons owing obligations to said Angola Bank Trust Company sought to escape payment. or collection by making fraudulent conveyances and transfers of their property subject to execution; and because thereof, this claimant, as attorney for said receiver, prosecuted many suits to set aside said conveyances and transfers. That it became necessary in many instances to institute proceedings supplemental to execution in order for said receiver to realize upon judgments theretofore recovered by him.

"That in many instances said receiver availed himself of his remedy in attachment to realize upon certain assets in his possession. That this claimant, in all attachment actions so brought, not only prepared, filed, and prosecuted said actions, but also executed all attachment bonds and undertakings as surety for said receiver. That this was done by said claimant in order

to expedite the prosecution of said actions, save time and expense of procuring other sureties, and was entirely outside the duties and obligations of said claimant as counsel for said receiver.

"That during the course of the administration of said receivership, it was necessary to prepare and present to the court many petitions wherein the court was requested to grant certain authority to said receiver. That said claimant consulted with said receiver with reference to said petitions, prepared the same, submitted them to the court, and obtained the order and approval of said court thereto. . . .

"That in many of the actions prosecuted by said claimant for and on behalf of said receiver, said receiver recovered, as a part of the judgment, attorney fees allowed by the court. That in all instances, except those hereinafter referred to, said receiver collected and received any and all payments upon judgments, and made all settlements and compromises with judgment debtors. That. the proportion of said payments or settlements which were allowed as attorney fees thereupon passed into the hands of said receiver, and became assets for the benefit of said creditors of said Angola Bank Trust Company. That this claimant permitted said. receiver to realize upon and collect in full said judgments, including the attorney fees allowed, without objection; and said claimant has received in direct payment of attorney fees allowed in the causes of action hereinafter set forth, the sum of Three Hundred Twelve Dollars and Forty-five cents ($312.45), an itemized statement of which is attached hereto, made a part hereof and marked Exhibit 'D.' . . .

"That said claimant, Alphonso C. Wood, at all times during the course of his said employment, held himself in readiness to answer any demands that might be made upon him by said receiver; and for the first two

years thereof devoted by far the major portion of his time and energy to the performance of said duties. That the said Alphonso C. Wood declined any and all other employment tendered which might in any way conflict with his ethical representation of said receiver in the administration of the affairs of said insolvent trust company.

"That in addition to the services performed by said claimant for said receiver, as itemized and set forth in 'Exhibit A' attached hereto, said claimant held many consultations with said receiver and persons indebted to said Angola Bank Trust Company, and also traveled many miles in his own automobile at his own expense and all of which was not included in said itemized statement attached hereto. That all of said services and traveling expense, which were not kept account of by said claimant because of inadvertance or oversight, were performed and rendered at the special instance and request of said Mack Pogue, Receiver of Angola Bank Trust Company.

"That said services were rendered by said claimant, Alphonso C. Wood, to the said Mack Pogue, Receiver of Angola Bank Trust Company, at the special instance and request of the latter. The value of said services so rendered is the sum of Thirteen Thousand Dollars ($13,000.00). That said sum is now due and unpaid."

To the appellant's amended claim the appellee filed an answer in two paragraphs, the first in general denial and the second in payment. A verified motion for a change of venue from Judge Carlin was filed by the appellant based upon the alleged bias and prejudice of said Judge. This motion was overruled, whereupon the appellant filed an original mandate case in the Supreme Court of this State to compel the said Judge to grant such change of venue and such proceeding was had therein as that the said Judge by mandate was com-

pelled to grant said change of venue, whereupon a special judge was duly appointed and qualified and proceeded to try this cause without the intervention of a jury.

The finding of the court was as follows: "And the court having heard the evidence and being duly advised in the premises, finds for the plaintiff in the sum of $203.04 on items set out in exhibit B and exhibit C of the complaint for expenses, and that the plaintiff take nothing on his claim for fees and services." The judgment was in accordance with the finding.

A motion for a new trial was filed and overruled. We set out the salient parts of the motion as follows:

"(1)   The decision of the court is contrary to law.

(2)   The decision of the court is not sustained by sufficient evidence. . . .

(5)   For error of law occurring at and during the trial in this, to-wit: That while one Clyde C. Carlin, a witness, was testifying for and on behalf of the defendant Mack Pogue, receiver of Angola Bank Trust Company, counsel for the defendant propounded to him the following question: 'Q. Judge, basing your opinion upon the examination of the services set forth in the claim herein, with particular reference to the Exhibit A. setting forth the dates and nature of the services and the hours consumed in performing those services, and basing your opinion upon the nature of the matter set forth in Exhibit A you have previously testified to in relation to the court cases filed and the services performed by the claimant herein, I wish you would state what in your opinion is the reasonable value of the services sued upon in this claim and set forth in detail in claimant's Exhibit A attached to the claim?' and to which question the claimant interposed the following objection, to-wit: 'To which the plaintiff objects for the reason that it calls for the conclusion of the witness,

and his own conclusion is not based upon any hypothetical or assumed statement of facts within the evidence in this cause; for the further reason that it calls for the opinion and conclusion upon the facts within his own knowledge and not upon the affirmative facts stated by him to be within his knowledge, not his testimony in this cause; for the further reason that it includes facts and circumstances outside of any facts proven in this cause either in the testimony of the witness or otherwise; and that it is not permissible for this witness or any witness to state such a conclusion or such opinion as this calls for, and invades the province of the court on the matters at issue herein. Plaintiff objects for the further reason that to permit the witness to answer this would be to permit him to express his opinion and to determine the issues in this cause, as to which opinion or conclusion he is excluded by reason of the fact that he is the regular judge of this court, the 35th Judicial Circuit, but that a change of venue was granted in this cause and all jurisdiction or right to determine any question of fact or express any opinion has been taken from him, and he is excluded therefrom.' Which objection was by the court overruled to which ruling of the court the claimant then and there excepted; whereupon said witness answered said question as follows: 'A. $5,250.00, the amount allowed.'

(6) The assessment of the amount of recovery is erroneous, being too small.

(7) The abuse of discretion on the part of the court in determining the issues in said cause and in rendering said judgment.

(8) The abuse of discretion by the court in this, to-wit: That said court failed and refused to allow the claim of this claimant for the fair and reasonable value of the services shown to have been rendered, and which said services consisted generally of this claimant act-

ing as general counsel for the receiver of the Angola Bank Trust Company from March 28, 1927, to and including December 26, 1930, in the liquidation and winding up of the affairs of said insolvent institution which, at the time of its failure, has assets of $678,596.55 and liabilities of $680,283.57, and which receivership, at the time of the filing of the final report of said receiver, has paid to its general creditors amounts aggragating ninety per cent (90%) of the total of all common claims presented and filed against said receivership; in doing and performing all work of a legal character connected with said receivership when requested so to do by said receiver; in doing and performing each and all of the services set forth and more specifically described in Exhibit A attached to the claim filed herein; in traveling with said receiver in the automobile of claimant upon the duties of said trust to the places more specifically set forth and itemized in Exhibit B attached to the claim filed herein; in advancing and paying himself certain items of expense pertaining to the administration of said trust, as specifically set forth in Exhibit C attached to the claim filed herein; in investigating the law and the facts and thereafter preparing and filing in the Steuben Circuit Court, and acting as counsel for said receiver therein until finally disposed of, in each and all of the causes of action set forth and enumerated in Exhibit E attached to the claim filed herein; in representing said receiver in all litigated trial work in each of said cases aforesaid, in numerous cases filed in inferior courts, and in cases filed or tried in other jurisdictions; in investigating the law and laying the proper foundation for a proceeding to enforce the constitutional liability of the stockholders of said bank; in taking such action in court as was necessary to enforce said stockholders liability, including the trial and taking of judgments against such stockholders re-

fusing to pay and the prosecution of two separate stockholder liability cases to final judgment in the Supreme Court of State of Indiana; in being an active attorney of record in the commencement and settlement of an action for damages against the officers and directors of said bank because of their negligent management thereof, and the recovery therefrom by said receiver of the sum of $52,500.00; and in surrendering and giving up all other gainful employment during said period of time which conflicted with or was adverse to the diligent and ethical representation of said receiver in all matters of a legal character in the administration of the duties of said trust."

Several expert witnesses were produced by the appellant to prove the value of the services which he rendered to the said receivership and the appellee likewise produced several expert witnesses in making the defense against said claim. A hypothetical question was put to each of the appellant's expert witnesses which question was almost identical in each instance. We set out the hypothetical question propounded to Judge Link who was one of appellant's expert witnesses, the question being identical in legal effect with the question propounded to appellant's other expert witnesses. It is as follows: "Judge Link, assuming that in March, 1927, a corporation organized as a loan, trust, and savings deposit company under the laws of the State of Indiana and located at Angola, Indiana, and engaged for many years in conducting a general banking business suspended its operations and upon a petition filed by the State Banking officials of the State of Indiana was adjudged in the Steuben Circuit Court to be insolvent, and a receiver was appointed, the receiver being a businessman with experience in mercantile affairs and an accountant, but not being an attorney, the receiver taking charge, the book assets of the trust company

when it suspended amounting to $678,596.55; that among its liabilities were liability to the depositors of $479,398.10 and liability to another bank on bills payable in the amount of $111,350.12; that these bills payable were owing to a Fort Wayne bank secured by $200,000.00 of the best collateral of the trust company; that after the appointment of the receiver Judge Wood was employed by the receiver as the general attorney for the receiver in the administration of the receivership and the affairs of the trust; that he remained as such attorney and performed legal services hereinafter set out in the administering of such receivership from the time of such appointment until December 31, 1930; that immediately after the appointment of said receiver, the said attorney was consulted by and from that time assisted said receiver in the administration of the said receivership by performing services as hereinafter assumed; that shortly after the appointment of the receiver the attorney prepared a petition in the name and on behalf of the receiver against all of the stockholders of the trust company, of which there were thirty-five stockholders, and filed a petition against them in the Steuben Circuit Court for the obtaining of an order of assessment against such stockholders for the amount of the par value of the stock held by them severally; and that legal notices were given upon said petition and such proceedings were had therein that thereafter an order was made in said Steuben Circuit Court assessing the amount of the par value of the stock against each of such stockholders and ordering all stockholders that they pay the amount of such assessment to said receiver; the said order having been made on April 25, 1927, within about a month after the appointment of the receiver; that there were three of the said stockholders who refused to pay such assessments, one of them being president of the institution who was the

owner of stock of the par value of $1,000.00, another being a stockholder owning stock of the par value of $2,500.00, and the other a stockholder owning stock of the par value of $5,000.00; that suits were brought by the attorney on behalf of said receiver against said three stockholders in the Steuben Circuit Court to enforce their constitutional and statutory liability as such stockholders; that such suits were originally filed under one title or number in said court, but thereafter they were separated, docketed separately as three pending causes; that the president of the bank owning $1,000.00 par value of stock and the stockholders owning the stock of the value of $2,500.00 appeared in said cause and defended same; and that they were tried in the Steuben Circuit Court before a special judge appointed to hear same and in each of said causes the judgment was rendered on behalf of the receiver; that the defendant stockholders in each of said cases appealed from the judgment rendered against him on their stock liabilities to the Appellate Court of Indiana; said causes were appealed to the Appellate Court of Indiana and thereafter were transferred to the Supreme Court of the State of Indiana; where upon final hearing, the judgments in said causes were both affirmed in behalf of said receiver and thereafter said judgments were collected and paid to the receiver, and the proceeds thereof made a part of the assets of said receivership; that all legal service of bringing trial of said causes and of the conducting of the defense of said appeal were performed by said general attorney; that the third stockholder owning the stock of the par value of $5,000.00 did not actively resist or defend against said cause, and ultimately judgment was rendered against him for the par value of said stock; $5,000.00 from which no appeal was taken and upon which judgment there was thereafter collected $500.00; that there was recovered by the

receiver upon all of the stockholders' liabilities including those which suits were brought and trial had as stated a total of $53,290.24, which became a part of the assets of said receivership and were ultimately distributed to the creditors; that in addition to the recovery from said stockholders a committee of depositors employed counsel other than the attorney for the receiver to bring action against the officers of the trust company for damages resulting from negligence; that in that matter a suit was brought by said attorneys other than the attorney for the receiver; that in investigation of facts connected with such suit and the question of the liability of such officers the receiver and said attorney consulted with other attorneys and cooperated with them and that thereafter a settlement was made in said claim against said officers in which there was obtained by compromise upon said claim the sum of $52,-000.00 which was paid to the receiver and became a part and administered as a part of the assets of said receivership; and in the negotiation of such settlement and in the making of such settlement said attorney for said receiver confirmed and consulted and cooperated with said rceiver and said other attorneys, spending time therein as herein further set out; that the total receipts by the receiver in the liquidation of said trust, the total, amount which came into his hands for administration was $589,391.17, of which $484,100.93 was collected from the listed or book assets of the trust company other than the real estate, $5,300.00 realized from the sale of real estate belonging to the trust and the two items which I have stated as recovered from the stockholders liabilities and the officers liabilities; that from these assets collected by the receiver the receiver paid to the depositors upon the total deposit of $479,398.10 dividends amounting to 90% of such deposits; and that the total expense of the administration

of such receivership, receivers fees which amounted to $13,000.00, attorneys fees other than the fees of the receiver's attorney amounting to $1,794.10 and including $5,374.44 paid to the general attorney to apply upon his fees, of which an amount of $24.44 was for his expense actually incurred; and that since the said general attorney has ceased performance as attorney for the receiver expense has been incurred by the receiver of but $400.00; that in the administration of such trust payment of such expenses and the distribution of 90% in dividends to the depositors of the funds received by the receiver, excepting a balance of $7,528.18, has been paid; that on the 22nd of June, 1935, the receiver filed his final report showing such proceedings and distribution, which report is pending in the Steuben Circuit Court for final hearing; and that all of the business of said trust has been transacted except the determination and disposition of the claim of said general attorney; that in the performing of legal services for said receiver the said general attorney, prepared the complaint and brought action and filed in the Steuben Circuit Court, including the three cases against stockholders, a total of sixty-seven (67) separate civil actions in the name of said receiver against persons indebted to said trust company, and others; and also filed in Justice courts twenty-five (25) or thirty (30) civil actions in the name of said receiver against persons indebted to said trust company; that, in the performance of said services as herein stated, and assuming the said attorney for the receiver performed the following services for the said receiver upon the dates herein designated and upon the said several dates spent in said service the following amounts of time, namely: Claimant's Exhibit A attached to bill of particulars; assuming Judge Link, that the facts contained assumed therein were true and the services were performed as herein as-

sumed, state what in your opinion is the value of the services rendered by Judge Wood."

It is clearly evident from the question and the proceedings that were had that these witnesses testified not only to the value of the services as set forth in the exhibit A but also testified to the value of the general services rendered to the said receivership by the appellant which were not detailed in the exhibit A. The appellee objected to the hypothetical question, the objection being based upon his contention that the appellant was bound by and could recover only for the items specified in Exhibit A of his claim. The court overruled the objection with an exception and later on in the trial this same objection was in effect renewed by the appellee in a motion to strike out the evidence of these expert witnesses who had testified for the appellant. This motion was likewise overruled.

The appellee in his brief makes the following statement: "The question before this court for decision is whether there is any competent evidence or any legitimate inferences that can be drawn therefrom to sustain the action of the trial court in denying the claimant compensation in excess of $5,-250.00, the amount already paid to him out of the trust." Of course it is a familiar rule and one that needs no citation of authority to sustain it that this court will not weigh conflicting evidence and substitute its judgment for the judgment of the trial court. As we understand the appellant's position as shown by his brief he does not question the above contention. Rather it is the appellant's contention that as to a major part of his amended claim the appellee introduced no evidence whatever.

Both in the oral argument of this cause before this court and in the briefs the appellee contended that the appellant was limited in his recovery to the items con-

tained in the said exhibit A filed with the amended claim. We quote from the appellee's brief as follows: "The record shows that the cause was tried in the trial court on the theory that the recovery was limited to the bill of particulars. That is to say, that recovery could be had, only for the items sued on as set forth in the bill of particulars." We do not agree with the appellee upon either of the two propositions above quoted but we set them out by quotation to demonstrate the appellee's contention.

Both sides agree that the questions presented by this appeal "make it necessary that the theory of the claim be determined." No one disputes but that the ▮▮ pleading of the appellant (the amended claim) must proceed upon a definite theory and that the theory upon which the cause was tried below cannot be shifted in this court on appeal. The usual rule is that it is the general scope and tenor of the pleading that determines its theory and not some isolated or detached allegations. See: *Farwick* v. *Walker Hospital of Evansville* (1936), 101 Ind. App. 489, 199 N. E. 883; *Indianapolis etc. Board* v. *Willson* (1934), 98 Ind. App. 72, 187 N. E. 400; *State ex rel. White* v. *Scott* (1908), 171 Ind. 349, 86 N. E. 409; *Muncie etc. Co.* v. *Citizens etc.* (1913), 179 Ind. 322, 100 N. E. 65.

Nothing can be clearer, also, than that in the instant case the appellant proceeded upon the theory that he was entitled under the claim as pleaded to introduce evidence upon which to base a very substantial part of his recovery over and above and in addition to the items set forth in said exhibit A. We agree with the appellant upon his theory of the claim. The ruling of the trial court in the admission of such evidence and in refusing to strike the same out upon the motion of the appellee, make it equally clear that the trial court adopted the appellant's theory and heard evidence as to the

value of appellant's services over and beyond and in addition to the services set out in said exhibit A. In fact the evidence of the expert witnesses for the appellant admitted under the trial court's said ruling placed the value of the entire services rendered by the appellant at not less than $9,500.00 and even as high as $15,000.00 or more. These rulings of the court under which such evidence was produced by the appellant and allowed to stand have not been challenged by the appellee in any assignment of cross-errors.

We have no reason to believe that one set of expert witnesses was more able than the other set. In fact the high character and ability of both sets of witnesses appear evident. But the hypothetical question propounded to one set of such witnesses was a largely different question from the hypothetical question propounded to the other set and this, no doubt, accounted for the wide difference in opinion. The hypothetical question propounded to one of the appellee's witnesses has heretofore been set out in cause number 5 of the motion for a new trial. It was substantially the same question asked of the other expert witnesses of the appellee. It limited the said witnesses to an opinion as to the value of the services set out in exhibit A of the amended claim. The hypothetical question propounded to appellant's witness Link which we have previously set out in this opinion was in substance asked of each of the appellant's expert witnesses. It did not limit them to an opinion as to the value of the services set out in said exhibit A, but required them to give their opinion as to the value of the entire service rendered by the appellant which included not only those services set out in exhibit A, but included also those services which were alleged in the amended claim to be "in addition to the services performed by said claimant for said receiver as itemized and set forth in exhibit A."

We believe that we are correct in our conclusion that the appellant's amended claim as pleaded permitted him to introduce evidence as to services rendered to the receivership generally and in addition to the items contained in exhibit A. This is not a case where the exhibit purports to itemize all of the items sued upon and in that respect controlling general allegations, but it is a case where the said exhibit A specifically sets forth certain hours of service and the claim then alleging that "in addition to the services performed by said claimant for said receiver as itemized and set forth in exhibit A" that the claimant was also entitled to compensation for such additional services.

When it is remembered that the appellant did introduce much evidence under the court's rulings above referred to as to the value of both the services set forth in said exhibit A and the value of the services rendered generally by the appellant to the receivership which the appellant alleged were "in addition to the services performed by said claimant for said receiver as itemized and set forth in exhibit A", and when it is noted that the appellee limited its evidence to matters contained only in said exhibit A, and when it is further remembered what the difference of opinion was between the appellant's witnesses who considered all of the services rendered by the appellant as alleged in the amended claim and fixed the minimum at $9,-500.00 and the appellee's witnesses who considered only such services as were listed in exhibit A and fixed the minimum at $5,250.00 and the maximum at $6,500.00 and that the court in its decision must have adopted the said evidence of appellee in fixing the amount at $5,250.00 then two things become at once apparent, to wit: 1st. The appellee has not met the entire claim of the appellant. 2nd. That the decision of the court fix-

ing the amount of the recovery at $5,250.00 plus the small items of expenses allowed must be erroneous.

We believe that the evidence of the appellant's expert witnesses given in their examination in chief and upon cross-examination correctly points out the elements to be considered in arriving at the fair value of the services rendered by the appellant to the receivership under the facts set forth in the appellant's amended claim. These elements may be summarized as follows: Where an attorney, as in the instant case, is employed as a general attorney in a receivership, consideration must be given in fixing his fee to the fact that he is thus precluded from accepting employment from or rendering service for clients whose interests are antagonistic to the trust; that he is burdened with the responsibility of conducting the legal phases of the administration of the trust; that in determining the proper compensation to be paid such an attorney a per diem or hourly basis is not a sufficient basis, but that the court should take into consideration the pertinent facts and circumstances connected with the trust, including its character, extent, value, responsibility involved on behalf of the attorney, litigation connected with the administration of the trust, character, capability and integrity of the attorney, his skill and experience and the final result attained in the administration of the trust. We think the authorities sustain the above viewpoint. See: 53 C. J. p. 380 Sec. 617 and notes; 2 Tardy's Smith, Receivers (2nd Ed) Sec. 636; 1 Clark, Receivers Sec. 642; 6 C. J. Sec. 331 and notes; *Harrigan* v. *Gilchrist* (1904), 121 Wis. 127, 397, 402, 454, 99 N. W. 909; *Marble* v. *Husbands* (1919), 185 Ky. 605, 215 S. W. 435.

Certainly such a decision as the trial court made herein may properly be said not to be sustained by suffi-

cient evidence and is contrary to law and erroneous as to the amount of the recovery in that it is too small under the evidence. It might further be said to be an abuse of the trial court's discretion in that the court fixed the amount of the recovery at several thousand dollars below the least amount shown by the uncontradicted evidence as to the value of the entire service rendered by the appellant as alleged in his amended claim. It is so fundamental as to require no citation of authority to the point that the trial court could have no discretion whatever to disregard the uncontradicted evidence and to fix an amount as due the appellant based upon a consideration of a part only of the services rendered by the appellant. We recognize that in some instances the trial judge in whose court the receivership is pending and who has had the opportunity because of his official position personally to know and observe the amount, kind and character of the services rendered by a general attorney for a receivership, may thus be in a position on account of said knowledge and observation to determine and allow what he regards as a reasonable allowance without hearing evidence on the subject, but that situation does not prevail in the instant case submitted to a special judge who had no such special knowledge and who must, from the very nature of the situation, hear evidence. The action of the trial court in fixing the allowance for the appellant, based upon evidence as to the value of a part only of the services rendered, must at once show its error. In no event can such a finding and judgment be allowed to stand. If the evidence of the appellee had covered the same ground as that of the appellant and there had been a difference of opinion merely as to the value of the services rendered, the trial court could then have fixed the amount due the appellant in such sum as

in the opinion of the court the evidence warranted, but as heretofore pointed out such was not the situation.

We can not sustain the contention of the appellant that the witness Carlin was not a competent witness. Section 2-1713 Burns 1933, §301 Baldwin's 1934, provides that: "All persons, whether parties to or interested in the suit, shall be competent witnesses in a civil action or proceeding except as herein otherwise provided." The exceptions to the general rule follow in the succeeding provisions but the witness Carlin does not fall within the enumerated incompetent class. It is true that while he was still sitting as the trial judge in the case a motion for a change of venue from him was filed supported by an affidavit that he was biased and prejudiced and that the Supreme Court of the State upon his refusal to grant said change compelled him by mandate to do so, yet these things would go to his credibility as a witness rather than to his competency as such.

It is contended by the appellant that since the appellee failed to introduce any evidence on the entire claim that in effect it produced no evidence at all material to the issue and that this court, therefore, under section 2-3229 Burns 1933, §467 Baldwin's 1934, of the statute should proceed to order the lower court to enter judgment for the appellant. This we cannot do for manifestly this court would have no way of determining what the amount of the judgment should be. Some of the witnesses for the appellant placed the value of the services as low as $9,500.00 and another placed it as high as $15,000.00 or more. Under these circumstances this court is in no position to order a final judgment. See: *Parkinson, Treas.* v. *Thompson* (1905), 164 Ind. 609, 73 N. E. 109.

Neither side has questioned the procedure in this case

nor has there been any suggestion that the special judge who tried the cause could have fixed the amount to be allowed the appellant on his amended claim without regard to the evidence. From a practical standpoint the procedure herein was the only way that the special judge could determine the matter fairly. His only knowledge of the case necessarily came from the evidence introduced before him.

Other questions are presented by the appellant which we do not deem necessary to discuss since in a retrial of the case the alleged errors are not likely to occur again.

The judgment is reversed with instructions to the trial court to grant a new trial and to hear evidence upon the value of the entire services alleged to have been rendered by the appellant as alleged in his amended claim and to make its finding and enter its judgment thereon in accordance with this opinion.

Judge Wood of this court being a party to this litigation, took no part in any of the deliberation or decision of this cause. See: *Estate of Charles T. Doxey* v. *Services et al.* (1902), 30 Ind. App. 174, 65 N. E. 757.

Judgment reversed.

Laymon, J., concurs in result.