SOUTHERN INDIANA GAS & ELECTRIC CO. *v.*
PAUL RILEY ET AL.

[No. 671S154. Filed July 31, 1973].

*John R. Burke, Jr., Bamberger, Foreman, Oswald and Hahn,* of Evansville, for appellant.

*Donald G. Hendrickson,* of Boonville, for appellee.

PRENTICE, J.—Plaintiff (Appellant) a utility company, condemned an easement for electric transmission lines across the lands of the defendant (appellees), and filed exceptions to the award of the appraisers. Following a trial by jury, and judgment upon its verdict, Plaintiff appealed to this Court. The issues relate to the valuation of a portion of the affected land by witness Hatfield, testifying as an expert for the defendants, and to the giving and refusal of certain instructions regarding the elements to consider in making such valuations.

The lands affected consisted of approximately eighty-two acres used for farming and a homestead by Defendants at the time of the "take." The farm was located 6.2 miles from the city of Boonville and had approximately two thousand

feet of frontage along a hard-surfaced road. Witness Hatfield testified that the highest and best use for the land had two categories, farming and homestead, as to approximately seventy-five acres, and residential building sites, as to seven acres fronting on the hard-surfaced road. "There would be seven one-acre tracts which could be utilized for highest and best use for building sites." In expressing his appraisal, the witness later said that he allotted seven acres of the lands affected to home sites, whereupon the plaintiff interposed the following objection and motion to strike:

"Now Your Honor, I move to object and strike the testimony for the reason that it is improper for a witness to state an opinion with respect to a specific use when that use is not in effect in existence, at the time of the take and there is no evidence here that there is now or ever has been any building sites on this property. The property is not shown to be platted, no plat is recorded, this is nothing more than acreage and it is improper for the witness to state a separate opinion with respect to some supposed building sites which do not now exist and never have."

Also to be considered, along with the foregoing ruling, is the court's refusal of the plaintiff's tendered instruction No. 4, which was as follows:

"In determining the fair market value of the easement along and over which the plaintiff's facilities are constructed, you are instructed that the fair market value of such easement is the price in terms of money which it would bring if exposed for sale in the open market with a reasonable time allowed in which to find a purchaser, buying with the knowledge of all the uses and purposes to which it was adapted and for which it was capable of being used, that is, the price such easement would bring when offered for sale by one who desires, but is not required, to sell, and sought by one who desires, but is not required, to buy, after due consideration of all the elements reasonably affecting value. It is the amount for which the easement would actually sell at the time; and not what it might bring at some future time unless it appears that the present market value is enhanced by that chance of probability. You should determine such fair market value as of on or about the

24th day of December, 1968, the day on which the defendants herein were notified of the filing of the complaint herein."

The issue to be resolved, then, is the propriety of valuations and testimony supportive thereof of lands not yet in use as home sites but "ripe" therefor. Plaintiff has placed much confidence in *Northern Indiana Public Service Co.* v. *McCoy et ux.* (1959), 239 Ind. 301, 157 N. E. 2d 181; *State* v. *Vaughan et ux.* (1962), 243 Ind. 221, 184 N. E. 2d 143 and *First National Bank of Mishawaka* v. *Penn-Harris-Madison School Corp.* (1968), 250 Ind. 453, 237 N. E. 2d 108. We think that *Northern Indiana Public Service Co.* v. *McCoy et ux., supra,* contains some overly broad and misleading explanations. Entirely too much significance was given to the admission into evidence of a tentative plat of the land, and this Court held in a three-two decision, with Judges Arterburn and Landis dissenting, that the plat was inadmissible because it was unrecorded and that, for valuation purposes, the land must be considered as unplatted. The fallacy of this viewpoint is the conclusion that there is magic in the recording of a subdivision plat, i.e., that by such ministerial act, the highest and best use of the land is immediately transformed from one thing to another. In reality, whether or not the land has been platted into lots and recorded as such is but another factor to consider, along with many others, in determining its highest and best use. As stated by Judge Arterburn in his dissent, "Such evidence is competent for the jury to consider with other facts in determining a 'fair market value'." (*Citing Chandler et al.* v. *The City of Kokomo et al.* (1894), 137 Ind. 295, 36 N. E. 847; *The Ohio Valley Railway and Terminal Company* v. *Kerth* (1892), 130 Ind. 314, 30 N. E. 298). The holding of the trial court in *Northern Indiana Public Service Co.* v. *McCoy et ux., supra,* may have been subject to reversal, but if so, it was because of the context within which the plat was admitted and used. It should not have been used as evidence that the land consisted of "x" number of developed lots, each having a fair market value of

"y," because such would have been grossly erroneous and misleading to the jury. We see no reason, however, why such a plat or explanation should not be in evidence to reflect the highest and best use to which the land was then reasonably susceptable. The value, of course, remains at what it was *at that time and in its existing state* for that use and is not increased to what it might some day be, after it is fully developed, perhaps at great expense. The matter, then, is one of proper instruction and discretion of the trial judge.

We recently reversed the trial court for admitting into evidence plans for improvements to the real estate, under circumstances that would have invited the jury to speculate upon the value based upon the existence of such improvements. In that case, there was no evidence to indicate that the land was "ripe" for such development, thus the evidence was not there offered to reflect the highest and best use but rather to indicate a value *if used* in that manner; whereas, it had not been shown to be economically susceptible to such use. *State of Indiana* v. *Tri-State College* (1972), 258 Ind. 307, 280 N. E. 2d 813.

*State* v. *Vaughan et ux., supra,* holds that "* * * so long as testimony regarding the value of the land appropriated was related to the tract appropriated and not to the hypothetically projected subdivisions thereof.", a plat or sketch (or testimony) is admissible to show the adaptability of the land for a specified use. In *First National Bank of Mishawaka* v. *Penn-Harris-Madison School Corp., supra,* one witness gave testimony as to the value of the land as if it were platted and subdivided into lots, and another witness gave his opinion of the value of the land based upon the land being subdivided with the lots sold over a period of several years in the future. *Neither witness gave testimony as to the fair market value of the land as it existed on the date of the take.* The trial court granted a new trial, and we affirmed. However, we do not believe that the testimony of the witness Hatfield, in the case at bar, was so oriented. His testimony merely disclosed that seven acres

of the land in question was "ripe" or adaptable for use as home sites and that considering such potential use, its value, at the time of the "take," was $1500.00 per acre.

The issue is the value of the land on the day of the "take," with due consideration given to its potential future uses and value, but future improvements may not be compensated for, because they are not then in existence.

We believe that we can give no better explanation of how such evidence may be used and how it may not be used than that expressed in Nichols on Eminent Domain, Third Edition, § 12.3142 and quoted by us in *Northern Indiana Public Service Co.* v. *McCoy et ux., supra:*

"It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expenses of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed. The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use."

Plaintiff further asserts that the error in admitting the testimony of the witness Hatfield was compounded by the court's refusal to give its tendered instruction No. 4, and that, assuming arguendo that such evidence was admissible, its scope should have been limited in accordance with that instruction. We are in accord with the plaintiff's general statements and authorities in this regard. We do not agree, however, that the substance of such instruction was not adequately covered by others given by the court, specifically its final instructions Nos. 4, 11, 12 and 13. It is

a well settled rule in this state that a court may refuse to give requested instructions if the propositions therein stated are adequately covered by other instructions actually given by the court. *Hitch* v. *State* (1972), 259 Ind. 2, 284 N. E. 2d 783; *Sargeant* v. *State* (1970), 255 Ind. 252, 263 N. E. 2d 525; *Lamb* v. *York* (1969), 252 Ind. 252, 247 N. E. 2d 197; *Tuttle* v. *Reid et al.* (1966), 247 Ind. 375, 216 N. E. 2d 34.

Upon cross-examination, the plaintiff asked the witness Hatfield to give his definition of "highest and best use," to which the witness replied that it was the use that would return to the owner the highest return in terms of dollars. Thereupon, the plaintiff moved to strike the valuation testimony of the witness "* * * For the reason that the witness has displayed by his answer that he does not employ the proper definition of highest and best use as it is contained in Indiana cases and the testimony therefore, with respect to his evaluation is not competent." Plaintiff contends that inasmuch as the witness' definition did not take into account the reasonable probability of such use within the immediate future or a reasonable time, such factor was not considered by him. We do not agree that the witness' testimony indicated that he considered only the physical adaptability of the land for home sites and that he disregarded the necessary economic factors in his determination. He testified as to the distance from the subject real estate to the city and to the existence of other residential construction in the area. Whether or not he had taken all possible factors into account, or whether or not he had arrived at the same conclusion at which another person might arrive, went only to his credibility and the weight to be given to his testimony. We do not see this witness in the light of the witness in *Southern Indiana Gas & Electric Co.* v. *Gerhardt et al.* (1961), 241 Ind. 389, 172 N. E. 2d 204, where we held that the court erred in refusing to strike the opinion testimony of the witness, because it was based upon a false and inaccurate assumption of the facts. Further, the motion of Plaintiff, in the case under

consideration, was overly broad. Had it been well founded, it nevertheless would have been properly addressed only to his valuation of the home sites and not to his entire valuation testimony, as it was that valuation and only that valuation that was dependent upon his understanding of the factors to consider in determining the "highest and best use." Had the court sustained the plaintiff's motion, all of the witness' valuation testimony with respect to subject property would have gone out. However, we hold as we do upon this point because we think the witness' testimony revealed that he was competent to give the opinion which he did and that it was predicated upon reasonable probabilities and the adaptability of the land to the highest and best use testified to, notwithstanding his inability to articulately define "highest and best use" in accordance with the recent opinions of this Court.

The plaintiff next assigns error in the trial court's refusal to give its tendered instruction No. 10 and in the giving of the court's final instruction No. 14. It contends that its tendered instruction No. 10 was a proper instruction upon determining the highest and best use of the property under consideration and that the court's instruction No. 14, also upon the subject of determining the highest and best use, was inadequate, in that it failed to take into account that any valuation testimony regarding potential future use was to be viewed by the jury in the context of whether or not such use was reasonably foreseeable. We will not burden this opinion by setting forth the three instructions verbatim. Plaintiff's observation with respect to the court's instruction No. 14 is correct; however, his concern was amply provided for by the court's final instruction No. 15, whereby the jury was advised that contingent, remote or speculative damages could not be awarded.

The judgment of the trial court is affirmed.

Arterburn, C.J., DeBruler, Givan and Hunter, JJ., concur.

NOTE.—Reported in 299 N. E. 2d 173.