STATE OF INDIANA *v.* THE CHURCH OF THE NAZARENE
OF LOGANSPORT; LOGANSPORT SAVINGS & LOAN ASSOC.
OF LOGANSPORT; AUDITOR OF CASS COUNTY;
TREASURER OF CASS COUNTY.

[No. 678S112. Filed June 16, 1978.]

524

*Theodore L. Sendak,* Attorney General, *Anthony J. Metz, III,* Deputy Attorney General, for appellant.

*Roger K. Claudon, Conover, Claudon & Billings,* of Valparaiso, *Frederick Sabatini, Hanna, Small, Sabatini & Becker,* of Logansport, for appellee The Church of The Nazarene.

PRENTICE, J.—This matter is before us upon the petition of the appellant (State of Indiana) for transfer, following the decision and opinion of the Court of Appeals, First Dis-

trict, which appears at 354 N.E.2d 320. The Court of Appeals reversed the trial court and remanded the cause with an order for remittitur by the defendant and a new trial in the event the defendant should elect not to make such remittitur.

We hold that the Court of Appeals was correct in its determination of error but that its order of remittitur, under the circumstances of this case, contravenes our ruling in *Parkinson, Treasurer* v. *Thompson,* (1905) 164 Ind. 609, 73 N.E. 109, and is in conflict with *Wood* v. *Pague,* (1937) 103 Ind. App. 577, 5 N.E.2d 1011. Accordingly, transfer is granted, and the decision and opinion of the Court of Appeals, First District, is now ordered vacated.

Upon the issue controlling our decision, we adopt the opinion of the Court of Appeals and the statement of facts, as authored by Judge Lybrook:

"The State of Indiana, appellant-plaintiff, brings this appeal following a jury verdict in the sum of $45,000 in favor of the Church of the Nazarene of Logansport, defendant-appellee. This action arose from a partial taking, through condemnation proceedings, of land owned and occupied by the Church.

"The facts most favorable to the appellee reveal that the Church was located on the corner of Lynas and Clinton Streets in the City of Logansport and consisted of a stone and masonry structure erected in 1963. Prior to the take the building sat on 1.652 acres of ground. In order to construct U.S. 35 by-pass around the City of Logansport, the State appropriated .3847 acres of land by condemnation proceedings. The majority of the take was along the southern border of the Church's property, but a narrow strip was along the western border of the property which abutted Lynas Street. The church building itself was not touched.

"Extensive testimony concerning the Church's beliefs in connection with its future building plans was admitted into evidence over State's objections. The State's Motion in Limine, which sought to exclude evidence of specific contemplated future use and damages based on those uses, was denied prior to trial. Much of the evidence presented as to the value of the property taken was given by R. H. Hunnings and Delores Wade, both real estate experts who testified on behalf of the Church.

"The State presents the following issues for our review:

"(1) Was the proper measure of damages utilized in determining the amount of the verdict.

"(2) Was reversible error committed by overruling the State's Motion in Limine.

"(3) Was the verdict excessive and contrary to the evidence in light of the evidence presented at trial.

"I.

"[1]  It is well established in Indiana that the basic measure of damages in eminent domain cases is the fair market value of the property at the time of the take. IC 1971, 32-11-1-6 (Burns Code Ed.) ; *State v. Ahaus* (1945), 223 Ind. 629, 63 N.E.2d 199; *Alberson Cemetery Association v. Fuhrer*, (1923) 192 Ind. 606, 137 N.E. 545. It is mandated that the owner of property taken by the State must be fully compensated. Indiana State Constitution, Art. I, § 21.

"[2]  The case at hand cannot be disposed of by the traditional fair market value measure of damages alone. The land taken was a portion of a larger tract on which the church building was located. A small stripe was removed from both the south and west sides of the tract, thus reducing the size of the remainder on which the building now rests. In order for the Church to be justly compensated, the State must respond in damages for not only the market value of the strip of land which was appropriated, but also for damage resulting to the residue of the property owned by the Church.

"[3]  In order for severance damages to be assessed, in a case such as the one before us, three basic conditions were specified in the case of *State of Indiana v. Heslar, Extrx.*, (1971) 257 Ind. 307, 274 N.E.2d 261, where the court held there must be simultaneous unity of title (Ownership), unity of use and contiguity. The Church in the case at bar clearly meets all three prerequisites for an award of severance damages.

"[4]  The correct rationale for severance damages has been pronounced by Judge Kiley, in the case of *United States v. 105.40 Acres of Land, etc., Porter Cty.,* Ind. (7th Cir. 1972), 471 F. 2d 207, where he aptly stated:

" 'The essence of severance damages is the loss in value to the "remainder tract" by reason of a partial taking of land. *Sharpe v. United States,* 191 U.S. 341, 24 S.Ct. 114,

48 L.Ed. 211 (1903); Jahr, Eminent Domain § 96 (1953) This is predicated on the enhanced value of the "remainder tract" because of its relationship to the whole prior to the taking.'"

It is clear from the evidence produced at trial that the market value of the residue property was reduced by the taking.

"The evidence most vehemently objected to by the State was given by R. H. Hunnings, an expert witness who testified on behalf of the Church. Hunnings explained in detail his opinion as to the lessening of market value, caused not only from the take itself, but also from the damages resulting to the church building, from altering the terrain and elevation of surrounding property, and affecting the Church's ingress and egress to its premises. Hunnings also testified concerning the specific tenets of the Nazarene Church and how the condemnation adversely affected the carrying out of those beliefs.

"[5]   The State appropriately argues that this evidence should not have been admitted as it related to an intended specific future use of the property by the Church (expansion of facilities and construction of a parsonage). The State correctly expounds the rule of law that intended future uses are not compensable in eminent domain proceedings. *State of Indiana* v. *City of Terre Haute, a Municipal Corp.*, (1968) 250 Ind. 613, 238 N.E.2d 459. The State has overlooked that a portion of this information is necessary to determine the diminution of market value to the residue as a result of the take and the construction of the highway.

"[6]   The proper method of assessing severance damages in Indiana has been expressed as being the difference between the market value of the entire tract and the market value of the residue following the partial taking. *Glendenning* v. *Stahley*, (1910), 173 Ind. 674, 91 N.E. 234; *Stephenson* v. *State*, (1963) 244 Ind. 452, 193 N.E.2d 369. In order to arrive at this figure, it was necessary for Hunnings to testify to the market values of the tract and buildings and then express an opinion as to the value of the residue. Hunnings testified that the value of the land taken was $3,162. A summary of Hunnings' testimony and our computations concerning damages appears later in this opinion. He further testified that the land and improvements prior to the taking was $144,750. He estimated that the $144,750 property would have a market value of approximately $67,625 (having deducted $9500

for the land prior to the take and reducing the cost by one-half which Hunnings testified to be the normal figure when estimating the market value of a church). To this figure Hunnings added $6,338 (the value of the land remaining and produced an estimate of $73,963 for the residue prior to the take). From this figure it was necessary to deduct $25,500 as a cost to cure the buildings because of relocation of the highway, leaving a market value of the residue of $48,463. To obtain the proper damages the later value should have been deducted from the market value of the entire property prior to the taking, resulting in damages to the residue of $25,500. To this should be added the market value of the take $3,162) resulting in total damages of $28,662.

*"SUMMARY OF TESTIMONY AND COMPUTATIONS OF DAMAGES*

| | |
|---|---:|
| "Cost to construct the property prior to take— | $144,750 |
| "Value of all land prior to take— | 9,500 |
| "Cost to construct building prior to take— | $135,250 |
| "Market value of building prior to take. (Market value being ½ of construction cost)— | $ 67,625 |
| "Value of residue of raw land after take (9500 — 3162 = 6338) | + 6,338 |
| "Value of building and land prior to take without considering damage to residue— | $ 73,963 |
| "Damage to residue (cost to cure defects created by moving roadway)— | 25,500 |
| "Market value of residue after the take— | $ 48,463 |
| "Market value prior to take— | $ 73,963 |
| "Market value after take— | —48,463 |
| "Damage to residue— | $ 25,500 |
| "Value of take— | + 3,162 |
| "Total maximum damages— | $ 28,662 |

"[7-9]   Hunnings was permitted to testify that the damages to the Church consisted of $97,050 (cost to construct less market value of residue). This in effect is an attempt to apply a substitution measure of damages. It is clear in Indiana that a substitution measure of damages (the cost of finding and purchasing an equivalent substitute for the property taken) cannot be applied to eminent domain cases.

*State* v. *Lincoln Memory Gardens*, (1961) 242 Ind. 206, 177 N.E.2d 655. The prejudicial effect of this statement by Hunnings is most clearly demonstrated by the jury verdict of $45,000. There is no evidence in the record showing any damages to the market value of the take or residue above $28,662 (see table above) yet the jury returned a verdict of nearly $17,000 above and beyond any proper evidence of the highest damages assessable. Clearly this verdict could only be supported by Hunnings' inadmissible statement concerning substitution damages."

The Court of Appeals at this juncture, proceeded under Ind. R.Ap.P. 15 (N) (5) and directed a remittitur of $16,338, reasoning that, without the aforementioned inadmissible evidence, the award could not have exceeded the sum of $28,662, as disclosed by the foregoing summary of testimony and computations. The fallacy of such order is that it presupposes that only that amount of the award in excess of the maximum allowable under the evidence properly admitted was attributable to a consideration of the evidence that was improperly admitted. Such a position does not comport with that portion of Ind. R.Ap.P. 15 which required the correction of error, without a new trial, to be "practicable and fair to all parties." An appellate tribunal may order the modification of a judgment to correct an error when a new trial is not required. The authority of an appellate court to so modify judgments would appear to be inherent but was, nevertheless, specifically provided by the Legislature by its special session act of 1881, Ch. 38, § 649, p. 240 (Burns 1933, § 2-3234). This authority has been carried into our rules of appollate procedure Ind. R.Ap.P. 15 (N) and recognized by Acts of 1969, Ch. 191 (now IC-34-5-1-2). Such authority includes the authority, in a proper case, to direct a remittitur or to affirm, conditioned upon a remittitur. The authority, however, does not permit an appellate court to speculate upon what the jury intended.

A review of the cases wherein the reviewing court has ordered a remittitur of excessive damages reveals that such

corrective action has been confined to those cases wherein the amount of excess is definite, *Halstead* v. *Stahl*, (1911) 47 Ind. App. 600, 94 N.E. 1056, 5B C. J. S. Appeal and Error § 1869, and to those cases for unliquidated damages wherein there was no error other than excessive damages appearing to have been caused by passion or prejudice. 5B C. J. S. Appeal and Error § 1861.

The case before us is analogous to *Mowes* v. *Robbins*, (1918) 68 Ind. App. 82, 120 N.E. 51, wherein the appeal was from a judgment entered in an action for fraud and assigned an instruction as error. The overruling of the motion for a new trial had been conditioned upon the appellee's entering a remittitur, which had been done. After rejecting the appellee's contention that the erroneous instruction was harmless, the appeals court responded to the remittitur issue:

> "Appellee also suggests that, in case the court finds the instruction to be erroneous and harmful, a reversal may be avoided by entering a remittitur of the excessive portion of the judgment. The facts of record afford no definite basis for determining the amount, if any, that should be remitted, and, in the absence of such facts, it would be a matter of speculation or guessing to which the court may not resort to avoid a reversal." 68 Ind. App. 87-88.

In the case at bar, the range of damages that could have been properly found extended from $4,075 to $28,662. The damages, as appraised by the witness Hunning, were $96,050, which he arrived at by rather complicated computations which included various amounts for various elements, all of which amounts were of a highly speculative nature and some of which elements were not allowable. The difference between the damages under his admissible testimony and his testimony that was inadmissible was $67,388. Omitting Mr. Hunning's testimony, the highest appraisal of damages was $5,900. We are, therefore, at a loss to understand why the Court of Appeals determined that $28,662 of the jury award was motivated by properly admitted evidence and only $16,338 thereof by the improperly admitted evidence, when from all

that appears from the record, the entire award may have been based upon the evidence improperly admitted. In accord, *Oldfather* v. *Zent,* (1895) 14 Ind. App. 89, 41 N.E. 555 (admission of improper evidence) ; *Indianapolis Traction & Terminal Co.* v. *Menze,* (1909) 173 Ind. 31, 88 N.E. 729 (manifest error in assessment of damages and conflicting evidence on issue of liability), 5B C. J. S. Appeal and Error § 1869.

Other errors assigned and not treated by the Court of Appeals should be here ruled upon, as they may be pertinent to a retrial of the case.

Prior to the commencement of trial, the appellant filed a motion in limine, seeking an order to preclude the appellee from offering evidence or making mention of anything relative to the intended future use of the subject of property. The motion was overruled, and the appellant has assigned such ruling as reversible error. Without determining whether or not the court erred in this connection, it appears that the motion sought to enjoin the offer of evidence that was inadmissible and, if sufficiently specific and limited, it would have been granted.

" 'Motions in limine' are a part of the Indiana practice. The trial court's authority to entertain 'motions in limine' emanates from its inherent power to admit and exclude evidence. This inherent power to exclude extends to prejudicial questions and statements that could be made in the presence of a jury and thereby interfere with fair and impartial administration of justice." *Burrus* v. *Silhavy,* (1973) 155 Ind. App. 558, 293 N.E.2d 794, 798.

" 'If prejudicial matters are brought before the jury, no amount of objection or instruction can remove the harmful effect, and the plaintiff is powerless unless he wants to forego his chance of trial and ask for a mistrial. Once the question is asked, the harm is done. Under the harmless error rule many of these matters would probably not be reversible error even though they have a subtle but devastating effect on the plaintiff's case.

" 'Perhaps the greatest single advantage to a motion in limine is not having to object in the jury's presence to evidence which is "logically relevant." Jurors cannot be ex-

pected to understand why they should not be allowed to consider all evidence which is related to the case, and will usually resent the fact that an objection kept them from hearing it.

" 'Another advantage in the use of these motions is to allow the trial judge an opportunity to study the question and the authorities involved. If presented in advance of trial with a brief and with the time to study it, the court will be more inclined to grant the motion.' " *Burrus* v. *Silhavy, supra,* 293 N.E.2d 794, 797-798. (Quoting from Davis, Motion in Limine, 15 Clev.-Mar. L. Rev. 255, 256-257 (1966).

It is doubtful, however, that reversible error could be predicated upon the denial of such a motion alone. The harm, if any, comes when the objectionable matter is tendered or admitted, and a further objection or motion would be required at the critical point in the trial. The limine order is very much like an order suppressing particular evidence; and we have held that notwithstanding an erroneous ruling upon the motion to suppress, if the error is to be preserved for appeal, there must be a proper objection made at the time the evidence is offered. *Pointon* v. *State,* (1978) 267 Ind. 624, 372 N.E.2d 1159; *Stowers* v. *State,* (1977) 266 Ind. 403, 363 N.E.2d 978. Conversely, an offer to prove will generally be required to preserve error in sustaining a motion in limine. *Niehaus* v. *State,* (1977) 265 Ind. 655, 359 N.E.2d 513.

Appellee's witness, Wade, arrived at a valuation of the land prior to the take by determining that it could be best utilized as three residential building lots and by totaling her appraised value of each such lot. The appellant moved to have the testimony stricken because of an improper method of valuation, i.e. mentally subdividing, citing *Southern Indiana Gas & Electric Company* v. *Riley,* (1973) 260 Ind. 643, 299 N.E.2d 173, and *State* v. *Maplewood Heights Corporation,* (1973) 261 Ind. 305, 302 N.E.2d 782. We are unable to rule specifically upon the issue, because the records and briefs do not sufficiently enlighten us. The rule cited by

Appellant precludes the determination of the value of land by considering it to be something which it is not. For example, a ten acre parcel of land susceptible of being subdivided into streets and twenty home sites having a value of $5,000 each may not be appraised as twenty home sites having a total value of $100,000. This is true, simply because the ten acre parcel is raw material, not the finished product, and it must be appraised as raw material. Nevertheless, if the same ten acre parcel was susceptible of being utilized as ten home sites, without encountering development expenses, and each such lot would have a market value of $5,000, the total value would properly be arrived at by totaling the value of the ten lots— $50,000. This, of course, presupposes a ready market for the ten lots at the price of $5,000 each. Under such circumstances, it would not be required that the land be valued at the price it would bring if sold as one unit. Multiple sales may be anticipated, so long as in so doing, the enterprise does not take on the form of a business venture entailing capital, skill, risk, profit and other such elements that combine to determine the price of the finished product.

Thus, we see no error in the method of valuation used by the witness, Wade, provided she was considering the land as it was on the day of the take. We are confused, however, because it appears that the Church building was situated upon a portion of the land. Obviously, that portion of the land occupied by the Church building or necessarily devoted to the Church use could not be appraised as vacant land.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Givan, C.J., and Hunter and Pivarnik, JJ., concur; De-Bruler, J., concurs in result.

NOTE.—Reported at 377 N.E.2d 607.