## ALBERSON CEMETERY ASSOCIATION *v.* FUHRER.

[No. 24,076.   Filed January 5, 1923.]

1.   EMINENT DOMAIN.—*Appropriation of Land for Cemetery.*—*Procedure.*—*Statutes.*— A proceeding to appropriate land to enlarge a cemetery, under Acts 1889 p. 302, as amended by Acts 1905 p. 120, (§§4442-4444 Burns 1914), in effect, by reason of an emergency clause, March 3, 1905, is within §929 *et seq.* Burns 1914, Acts 1905, p. 15, which did not take effect until April 15, 1905, and which provides that any person or corporation having the right to exercise the power of eminent domain under any statute, "shall do so only in the manner provided in this act except as otherwise provided herein." p. 610.

2.   EMINENT DOMAIN. — *Damages.* — *Elements.* — *Damages to other Land.*—*Statutes.*—Under §934 Burns 1914, Acts 1905 p.

59, in determining the damages for condemnation, not only the value of the land appropriated, but the damage to the residue of the owner's land, should be considered. p. 610.

3. EMINENT DOMAIN.—*Damages.*—*Right to Open and Close.*— In an eminent domain proceeding by a cemetery association, on trial of the issue of damages, on exception to the award of appraisers, the landowner is entitled to open and close. p. 610.

4. EMINENT DOMAIN.—*Damages.*—*Instructions.*—In an eminent domain proceeding by a cemetery association, instructions telling the jury, in effect, that the landowner was entitled to the actual value of the land taken, for the best use to which it "should be put" if it had a value "for a specified use," and that, if it was underlaid with sand or gravel which "can be used at no remote period," that fact might be considered in fixing damages, and which failed to limit the damages to the market value of the land at the time of its appropriation, *held,* as applied to the evidence, misleading and erroneous. p. 612.

5. EMINENT DOMAIN.—*Measure of Damages.*—The measure of damages for land appropriated for public use under the power of eminent domain is the fair market value for which it could be sold at the time of its appropriation; and the fact that the owner may have contemplated putting the land to some use in the future for which it shall be worth more than it would bring in the market at the time it was appropriated, does not justify an assessment of damages in excess of the market value at the time of its appropriation. p. 613.

From Adams Circuit Court; *E. E. McGriff,* Special Judge.

Condemnation proceedings by the Alberson Cemetery Association against Daniel Fuhrer. From the judgment rendered, the association appeals. (Transferred from the Appellate Court under §1392 Burns' Supp. 1918, Acts 1915 p. 149, cl. 9.)   *Reversed.*

*Abram Simmons, Charles G. Dailey, Virgil M. Simmons, Dore B. Erwin* and *John J. Kelly,* for appellant.

*A. W. Hamilton* and *C. J. Lutz,* for appellee.

EWBANK, J.—Appellant is a corporation organized under §4291 Burns 1914 (Acts 1913 p. 597) of the Voluntary Association Act, to acquire, hold and control grounds for cemetery purposes, without pecuniary profit

to the stockholders. It commenced this action by filing in the circuit. court a petition for the appropriation of a tract of land 204 by 207 feet, containing 97/100 of an acre, adjoining an existing cemetery under its control. Appraisers were appointed, who appraised that tract at $500, but certified that they fixed the damages to other real estate owned by appellee at $2,500, making a total of $3,000.

Each party excepted to the award and the cause was docketed in the circuit court, which ruled that it should be tried by a jury, that the jury should be instructed that appellee was entitled to recover for damage to that part of his farm not taken, as well as for the value of what was taken, and that the owner of the property taken was entitled to the actual value of the tract taken for the highest or best use to which it "should be put," and that, if it had an actual value for a specified use and was adapted to such use, he was entitled to that value, and that appellant was not entitled to instructions that in fixing the damages the jury should consider only the value of the tract sought to be appropriated, and had no right to consider damages to any other lands; also that appellee (the defendant) had the right to open and close the case, as having the burden of proof. Exceptions were reserved to each of said rulings of the court. The jury returned a general verdict in favor of appellee, assessing his damages at $2,000, on which the court rendered judgment for that amount, with costs.

The proceeding was brought under §§4442-4444 Burns 1914, being Acts 1889 p. 302, as amended by Acts 1905 p. 120. The amendment of the original act in 1905 consisted of granting authority to condemn land for a cemetery, as well as for the enlargement of an existing cemetery, and extending that authority to cities and towns as well as to cemetery corporations. As first enacted the original statute provided only that appraisers should

be appointed by the court "to appraise and assess the value" of lands appropriated, that they should be sworn "to make a fair, true and honest appraisement .of said real estate," and that upon exceptions to their report for any cause "a trial thereon may be had in said court." §§4443, 4444 Burns 1914, Acts 1889 p. 302. And the amendment did not change the statute in those particulars. .

But in 1905, "an act concerning proceedings in eminent domain" was passed, which provides that—"Any person, corporation * * * having the right to exercise the power of eminent domain for any public use, under any statute, existing or hereafter passed, and desiring to exercise such power, shall do so only in the manner provided in this act except as otherwise provided herein." §929 et seq. Burns 1914, Acts 1905 p. 59.

The statute cited then declares rules of procedure in such cases, including a provision that the appraisers shall be sworn to determine and report (among other items) the damages to the residue of the land of such owner to be caused by taking out the part sought to be appropriated. §934 Burns 1914, Acts 1905 p. 59. And that, upon exceptions being filed to their report, "the cause shall further proceed to issue, trial and judgment as in civil actions." §936 Burns 1914, Acts 1905 p. 59.

The amendatory act (§4442 Burns 1914, supra) contained an emergency clause (Acts 1905 p. 120, §2), and took effect March 3, 1905, while the act concerning proceedings in eminent domain (§929 et seq. Burns 1914, supra) did not contain such a clause (Acts 1905 p. 59) and did not take effect until April 15, of that year. §248 Burns 1914, note.

And the courts had previously held many times that,

where exceptions were taken to the amount of the assessment of damages in actions under like procedure to appropriate lands for the use of corporations operating railroads or turnpikes, the issues thus joined were triable by jury. *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), 163 Ind. 288, 290, 69 N. E. 546.

The trial court followed the rules laid down by said act concerning procedure, and submitted to a jury for trial issues as to the value of the tract appropri-

1-3.  ated, and also as to the damage to the residue of appellee's farm.  Appellant insists that this act of 1905 concerning proceedings in eminent domain does not apply to a proceeding for the appropriation of lands to enlarge a cemetery, notwithstanding its recital that any person, corporation or other body having the right to exercise the power of eminent domain shall do so only in the manner provided in that act, as quoted above. As to this point counsel are in error.  The act by its express terms embraces every proceeding to appropriate lands by any person, corporation or other body for any purpose, by authority of any law in force when it took effect, and the court did not err in following the procedure outlined in that act, nor in submitting the questions of damages to a jury.  And under the provisions of that act it was not error to refuse to give requested instructions to the effect that the jury should consider only the value of the lands appropriated, and not the damage to any other lands in assessing damages, nor was it error to permit the landowner to open and close the case.    §934 Burns 1914, Acts 1905 p. 59, §6; *Indianapolis, etc., Traction Co.* v. *Wiles* (1910), 174 Ind. 236, 238, 91 N. E. 161, 729.

There was evidence which tended to establish that appellee owned a farm of eighty acres, less the land occupied by highways, and by a cemetery of about an acre and a half in extent, which cemetery borders on the

highway at the south side of the farm 207 feet, and extends back toward the north 302 feet and 10 inches; that the west line of this cemetery is 135 feet east of the highway that runs along the west side of the farm, and the east line is 300 feet west of appellee's dwelling house, which is 35 feet north of the highway that runs along the south side of the farm and the cemetery; that an orchard lies between the cemetery and the house, and north of the house are a barn, shop and other out-buildings, the farthest of which are about as far north as the northern end of the existing cemetery; that near the barn, between it and the cemetery, is a sand and gravel pit, which had been opened 17 years before, from which materials were formerly taken to make cement blocks, but it had not been used for seven years past; that appellee had operated it for three years after he acquired the farm ten years before; that he had offered to sell the south half of the acre sought to be appropriated, and the land, about an acre in extent, lying west of it and of the existing cemetery, between them and the highway on the west, as containing three acres, at $200 per acre, but, when they measured the land and found that those lines would not embrace three acres, but that to take in that much the north line must be run farther north than the north line of his barn lot, he refused to sell it; estimates of the value of the farm, as a whole, before the appropriation of this addition to the cemetery, ranged from $175 to $250 per acre; appellee and his witnesses testified that in their opinion its value would be $25 to $50 less per acre on account of such appropriation, and that the tract containing 97/100 of an acre was worth $5,000 to $7,000; that beneath two or three feet of soil there was a bank of gravel in it, containing 8,000 or 10,000 yards, suitable for concrete, though the witnesses stated on cross-examination that no sales of lands had been made in the three years pre-

vious within five miles of appellee's farm for more than $225 per acre, and that different farms in the neighborhood had been sold for $150 to $200 and $225 per acre, respectively; a number of witnesses called by appellants testified that they had made borings on the tract sought to be appropriated, and that there was no gravel on it within seven feet of the surface, and that the old pit east of it, formerly operated, contained only sand.

As applied to this evidence the court gave instructions (in part) as follows (our italics): "(2) You are instructed that in actions like the one on trial the owner of the property to be condemned is entitled to its *actual value for its highest or best use* to which the property, in the condition it was at the filing of the petition, *should be put,* and if the jury believe from the evidence that the property described in the petition and sought to be condemned had an *actual value for a specified use,* and that such property was adapted to such use, then the owner is entitled to such value. * * * "(6) You are instructed that, while mere speculative values should not be considered in estimating damages in this case, yet a jury is not limited to any pre-existing use of defendant's land, such as for farm lands or for common uses, but if you should find from the evidence that defendants' land sought to be condemned is valuable on account of being underlaid with the sand or gravel, which is used *or can be used* at no remote period, then these (are) facts which are proper to be considered by the jury in *fixing the amount of recovery,* if any, which the defendant Daniel Fuhrer, is entitled to."

These instructions told the jury, in effect, that the appellee was entitled to the actual value of the land taken, for the best use to which it "should be 4. put" if it had a value "for a specified use," and that, if it was underlaid with sand or gravel which "can be used at no remote period," that fact might

be considered in fixing the damages. And they failed to limit such damages to the market value at the time of the appropriation. As applied to the evidence above set out this was misleading and erroneous.

The true measure of damages for land having a market value when appropriated for a public use is the fair market value for which the land could be sold if the owner were willing to sell. If the land taken has a higher market value by reason of the minerals it contains or by reason of a use or uses for which it may be adapted, but to which it has not been put, the owner is entitled to the market value, as so enhanced. But if there is a market value, nothing more than that can be recovered, and the fact that the owner may have contemplated putting his land to some use, in the future, for which it shall have been worth more than it would bring in the market at the time it was appropriated, does not justify an assessment of damages in excess of the market value at the time of its appropriation. 2 Lewis, Eminent Domain (3d ed.) §706; 10 R. C. L. 128, §112; 20 C. J. 728 *et seq.; Ohio Valley Railway and Terminal Co.* v. *Kerth* (1892), 130 Ind. 314, 319, 30 N. E. 298. Giving these instructions was error.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.