STATE ex rel. STATE HIGHWAY COM-
MISSION, Respondent.

v.

MOUNT MORIAH CEMETERY ASSO-
CIATION, Appellant.

No. 53564.

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1968.

Motion for Rehearing or to Transfer to Court
En Banc Denied Dec. 9, 1968.

Robert L. Hyder, Earl H. Schrader, Jr., Tom M. Raimo, Kansas City, for respondent.

Samuel J. Molby, Robert C. Canfield, Kansas City, for appellant, Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

HYDE, Special Commissioner.

Condemnation for state highway purposes of land owned by defendant Cemetery Association. The jury found defendant's damages to be $90,000 while the amount claimed by defendant was over $950,000.00, which difference gives this court jurisdiction.

Defendant operates a garden-type cemetery for profit. It owns 220 acres and has been selling grave spaces since 1922. 180 acres were included in its plan of development with 40 acres used for other purposes. At the time of the trial all the grave spaces sold were on the south 80 acres. The north 100 acres through which the highway right of way was condemned had been platted but not yet used for burials. The following facts were stipulated: Between the opening of the cemetery in 1922 and the date of taking for the highway in 1963 the average number of grave spaces sold per year was 1300; the average gross sales price per space received was $150.00 and the average net profit per space was $90.00 after deducting all expenses and provision for perpetual care; before the taking there were 69,515 unsold available grave spaces which would require 53 years to sell at the rate of 1300 per year; the highway took 27.3 acres and required 150 feet setback from the right-of-way line which took 25,912 available grave spaces, leaving 43,603 spaces which would require 34 years to sell at 1300 per year; and that the highest and best use of the property taken was for cemetery purposes.

Defendant claims that State of Missouri ex rel. State Highway Commission of Missouri v. Barbeau, Mo.Sup., 397 S.W.2d 561,

established a formula for computing damages for taking cemetery land on a capitalization basis, using the Inwood Tables. Defendant says the Barbeau formula is to be applied as follows:

"(1) Determine the number of burial lots or grave sites taken;

"(2) Determine the unit value, which is

(a) The average sales price per lot or site in the adjoining used section of the cemetery, less

(b) The reasonable cost of development, sales, maintenance, administration, perpetual care, and any other expenses affecting its value;

"(3) Multiply the number of lots or sites taken by the unit value determined; and

"(4) Discount the total to present worth for the deferred realization over the selling period."

Defendant further says since these facts involved, as well as the selling period of the lots, were stipulated, "the sole question of fact remaining for jury determination was the proper discount factor." Defendant's computations on different discount factors was based on interest rates it received on the investments of its permanent care fund and on rates paid by savings and loan associations. The State claimed a ten per cent rate should be used on the basis of risk of operation of a cemetery. The State's computation was $38,376.00 based on the theory that defendant's damage would not actually occur for 34 years from the date of taking (because enough spaces were left to last 34 years selling at the rate of 1300 per year).

Defendant's computation was as follows:

| | "Before Value | |
|---|---|---|
| "Number of Lots | 69,515 | |
| Unit Value | $90 | |
| Value of Total Lots Before | | $6,256,350.00 |
| | After Value | |
| Number of Lots Remaining | 43,603 | |
| Unit Value | $90 | |
| Value of Lots After | | 3,924,270.00 |
| Value of Land Taken | | $2,332,080.00 |
| | | |
| Discounted on 3% Basis | | $1,150,425.00 Damages |
| Discounted on 4% Basis | | 954,057.00 Damages |
| Discounted on 10% Basis | | 433,388.00 Damages" |

———◆———

■ Defendant assumes State ex rel. State Highway Commission v. Barbeau, supra, requires submission of this case on the capitalization formula used in that case. However, that case was tried by the court without a jury so no instructions were involved. We pointed out (397 S.W.2d 1. c. 566) that, in our review of court-tried cases, "the judgment shall not be set aside unless clearly erroneous" Civil Rule 73.01(d), V.A.M.R.; and we affirmed the judgment therein reached by that method as to the lots taken as not unreasonable under the circumstances of that case. Thus the Barbeau case does not mean damages in cemetery cases must always be computed in exactly the same way they were in that case. Certainly consideration can be given to other factors such as possible increase in operation costs

and decrease in demand for burial space in the location involved. As was stated in Cementerio Buxeda v. People of Puerto Rico (U.S.C.A. 1st) 196 F.2d 177, 181, while it is proper to instruct the jury as to the capitalization method of valuation: "This is not to say that valuing the parcel is merely a problem in multiplication."

■ However, defendant's claims of error are that it was error to give Instructions 3 (M.A.I. 9.02) and 4 (M.A.I. 15.01), requiring the jury to use the usual fair market value tests and standards. Defendant cites Graceland Park Cemetery Co. v. City of Omaha, 173 Neb. 608, 114 N.W. 2d 29, 31, relied on in the Barbeau case, in which the court said: " 'There are types of property that are not bought and sold on an open market and consequently do not have a reasonable market value within the rule that the fair market value is the price which property will bring when offered by a willing seller to a willing buyer, neither being obligated to buy or sell. The fair market value of property implies proof of sales of similar property in the community as a means of fixing the value of the property taken. When the property is such that evidence of fair market value is not obtainable, necessarily some other formula for fixing the fair value of the property must be devised. This is true, as we view it, of such properties as school yards, church yards, college campuses, buildings under construction, and cemeteries. [Citation] We hold, therefore, that in the taking of land used for cemetery purposes the measure of damages is not the fair market value of the land for the simple reason that such property has no fair market value.' " The Nebraska court approved the capitalization formula adopted in St. Agnes Cemetery v. State of New York, 3 N.Y.2d 37, 163 N.Y. S.2d 655, 143 N.E.2d 377, 62 A.L.R.2d 1161; see also Cementerio Buxeda v. People of Puerto Rico (U.S.C.A. 1st), 196 F.2d 177; State of Indiana v. Lincoln Memory Gardens, Inc., 242 Ind. 206, 177 N.E.2d 655; Jahr, Eminent Domain, Valu-

ation and Procedure 116, Sec. 82; 4 Nichols' The Law of Eminent Domain, Revised Third Edition 218–220; Sec. 12.32, 1 Orgel on Valuation Under Eminent Domain, Chap. III. We have also approved use of the capitalization method of valuation for condemnation cases in which there is no evidence of fair market value, in City of St. Louis v. Union Quarry & Construction Co., Mo.Sup., 394 S.W.2d 300. All these authorities hold the usual test of fair market value cannot be applied to a cemetery where there is no evidence of such value.

Instruction 3 herein required the jury to "award defendant such sum as you believe was the difference between the fair market value of defendant's whole property immediately before the taking on June 1, 1963, and the value of defendant's remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken. (M.A.I. 9.02)" Instruction 4 (M.A.I. 15.01) stated: "The term 'fair market value' means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and is bought by one willing or desirous to purchase it but who is not compelled to do so."

These instructions do not fit this case. There was no evidence on which to base the test stated in Instruction 4 and that test was the basis for Instruction 3. In State v. Lincoln Memory Gardens, Inc., supra (242 Ind. 206, 177 N.E.2d 1. c. 659), the court held it proper to refuse an instruction which required consideration of the value of surrounding comparable property when there was no evidence of the value of comparable property. We, therefore, hold it was prejudicial error to give these instructions in this case, which is not the kind of case for which they were designed.

■ While in theory market value is the test (the hypothetical measure being what

another cemetery would pay if there was one willing to buy, see 4 Nichols 219) the usual means of determining market value are lacking and it is necessary to resort to some other method. It is said in the Buxeda case the real problem (196 F.2d 1. c. 180) is "to show the value of the property as used for a cemetery as a whole at the time of the condemnation and its value after the condemnation. The difference would be the measure of the compensation allowable to it." A proper instruction might be drawn on this basis, following the standards stated in Civil Rule 70.01(e); see also M.A.I. XXXII. Since it is common knowledge that cemeteries are not sold on the market and evidence of the usual fair market value of land is not available, some other measure must be used. The capitalization method is evidence to show such values, but it is not a rigid formula for mathematical determination of the damages.

The judgment is reversed and the cause remanded.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.