354 N.E.2d 320 (1976)
STATE of Indiana, Appellant (Plaintiff below),
v.
THE CHURCH OF THE NAZARENE OF LOGANSPORT ET AL., Appellee (Defendant below).
No. 2-975A224.
Court of Appeals of Indiana, First District.
September 15, 1976.
Rehearing Denied October 20, 1976.
*321 Theodore L. Sendak, Atty. Gen., Anthony J. Metz, III, Deputy Atty. Gen., Indianapolis, for appellant.
Roger K. Claudon, Conover, Claudon & Billings, Valparaiso, Frederick Sabatini, Hanna, Small, Sabatini & Becker, Logansport, for appellee.
LYBROOK, Judge.
The State of Indiana, appellant-plaintiff, brings this appeal following a jury verdict in the sum of $45,000 in favor of the Church of the Nazarene of Logansport, defendant-appellee. This action arose from a partial taking, through condemnation proceedings, of land owned and occupied by the Church.
The facts most favorable to the appellee reveal that the Church was located on the corner of Lynas and Clinton Streets in the City of Logansport and consisted of a stone and masonry structure erected in 1963. Prior to the take the building sat on 1.652 acres of ground. In order to construct U.S. 35 by-pass around the City of Logansport, the State appropriated .3847 acres of land by condemnation proceedings. The majority of the take was located on the southern border of the Church's property, but a narrow strip was located along the western border of the property which abutted Lynas Street. The church building itself was not touched.
Extensive testimony concerning the Church's beliefs in connection with its future building plans was admitted into evidence over State's objections. The State's Motion in Limine, which sought to exclude evidence of specific contemplated future use and damages based on those uses, was denied prior to trial. Much of the evidence presented as to the value of the property taken was given by R.H. Hunnings and Delores Wade, both real estate experts who testified on behalf of the Church.
The State presents the following issues for our review:
(1) Was the proper measure of damages utilized in determining the amount of the verdict.
(2) Was reversible error committed by overruling the State's Motion in Limine.
(3) Was the verdict excessive and contrary to the evidence in light of the evidence presented at trial.

I.
It is well established in Indiana that the basic measure of damages in eminent domain cases is the fair market value of the property at the time of the take. IC 1971, XX-XX-X-X (Burns Code Ed.); State v. Ahaus (1945), 223 Ind. 629, 63 N.E.2d 199; Alberson Cemetery Association v. Fuhrer (1923), 192 Ind. 606, 137 N.E. 545. It is mandated that the owner of property taken by the State must be justly compensated. Indiana State Constitution, Art. I, § 21.
The case at hand cannot be disposed of by the traditional fair market value measure of damages alone. The land taken was a portion of a larger tract on which the church building was located. A small strip was removed from both the south and west sides of the tract, thus reducing the size of the remainder on which the building now rests. In order for the Church to be justly compensated, the State must respond in damages for not only the market value of the strip of land which was appropriated, but also for damage resulting to the residue of the property owned by the Church.
In order for severance damages to be assessed, in a case such as the one before *322 us, three basic conditions must exist. These conditions were specified in the case of State of Indiana v. Heslar, Extrix. (1971), 257 Ind. 307, 274 N.E.2d 261, where the court held there must be simultaneous unity of title (Ownership), unity of use and contiguity. The Church in the case at bar clearly meets all three prerequisites for an award of severance damages.
The correct rationale for severance damages has been pronounced by Judge Kiley, in the case of United States v. 105.40 Acres of Land, etc., Porter Cty., Ind. (7th Cir., 1972), 471 F.2d 207, where he aptly stated:
"The essence of severance damages is the loss in value to the `remainder tract' by reason of a partial taking of land. Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903); Jahr, Eminent Domain § 96 (1953). This is predicated on the enhanced value of the `remainder tract' because of its relationship to the whole prior to the taking."
It is clear from the evidence produced at trial that the market value of the residue property was reduced by the taking.
The evidence most vehemently objected to by the State was given by R.H. Hunnings, an expert witness who testified on behalf of the Church. Hunnings explained in detail his opinion as to the lessening of market value, caused not only from the take itself, but also from the damages resulting to the church building, from altering the terrain and elevation of surrounding property, and affecting the Church's ingress and egress to its premises. Hunnings also testified concerning the specific tenets of the Nazarene Church and how the condemnation adversely affected the carrying out of those beliefs.
The State appropriately argues that this evidence should not have been admitted as it related to an intended specific future use of the property by the Church (expansion of facilities and construction of a parsonage). The State correctly expounds the rule of law that intended future uses are not compensable in eminent domain proceedings. State of Indiana v. City of Terre Haute, a Municipal Corp. (1968), 250 Ind. 613, 238 N.E.2d 459. The State has overlooked that a portion of this information is necessary to determine the diminution of market value to the residue as a result of the take and the construction of the highway.
The proper method of assessing severance damages in Indiana has been expressed as being the difference between the market value of the entire tract and the market value of the residue following the partial taking. Glendenning v. Stahley (1910), 173 Ind. 674, 91 N.E. 234; Stephenson v. State (1963), 244 Ind. 452, 193 N.E.2d 369. In order to arrive at this figure, it was necessary for Hunnings to testify to the market values of the tract and buildings and then express an opinion as to the value of the residue. Hunnings testified that the value of the land taken was $3,162. A summary of Hunnings' testimony and our computations concerning damages appears later in this opinion. He further testified that the land and improvements prior to the taking was $144,750. He estimated that the $144,750 property would have a market value of approximately $67,625 (having deducted $9500 for the land prior to the take and reducing the cost by one-half which Hunnings testified to be the normal figure when estimating the market value of a church). To this figure Hunnings added $6,338 (the value of the land remaining and produced an estimate of $73,963 for the residue prior to the take). From this figure it was necessary to deduct $25,500 as a cost to cure the buildings because of relocation of the highway, leaving a market value of the residue of $48,463. To obtain the proper damages the later value should have been deducted from the market value of the entire property prior to the taking, resulting in *323 damages to the residue of $25,500. To this should be added the market value of the take ($3,162) resulting in total damages of $28,662.

 SUMMARY OF TESTIMONY AND COMPUTATIONS OF DAMAGES
 Cost to construct the property prior to take - $144,750
 Value of all land prior to take - - 9,500
 ________
 Cost to construct building prior to take - $135,250
 Market value of building prior to take. (Market value being
 1/2 of construction cost) - $67,625
 Value of residue of raw land after take (9500 - 3162 = 6338) + 6,338
 ________
 Value of building and land prior to take without considering
 damage to residue - $73,963
 Damage to residue (cost to cure defects created by moving - 25,500
 roadway) ________
 Market value of residue after the take - $48,463
 * * *
 Market value prior to take - $73,963
 Market value after take - - 48,463
 ________
 Damage to residue - $25,500
 Value of take + 3,162
 ________
 Total maximum damages - $28,662

Hunnings was permitted to testify that the damages to the Church consisted of $97,050 (cost to construct less market value of residue). This in effect is an attempt to apply a substitution measure of damages. It is clear in Indiana that a substitution measure of damages (the cost of finding and purchasing an equivalent substitute for the property taken) cannot be applied to eminent domain cases. State v. Lincoln Memory Gardens (1961), 242 Ind. 206, 177 N.E.2d 655. The prejudicial effect of this statement by Hunnings is most clearly demonstrated by the jury verdict of $45,000. There is no evidence in the record showing any damages to the market value of the take or residue above $28,662 (see table above) yet the jury returned a verdict of nearly $17,000 above and beyond any proper evidence of the highest damages assessable. Clearly this verdict could only be supported by Hunnings' inadmissible statement concerning substitution damages.
In light of our disposition of the first issue, we deem it unnecessary to discuss issues two and three.
*324 From the evidence in the record we determine the damages could not exceed $28,662 together with interest.
Therefore, pursuant to Ind.Rules of Procedure AP. 15(N)(5) we direct a remittitur and find the correct damages to be in the sum of $28,662 together with proper interest; provided further that if the defendant shall elect not to make such remittitur, then and in such event, a new trial is ordered.
Reversed and remanded for further proceedings not inconsistent with this opinion.
ROBERTSON, C.J., and LOWDERMILK, J., concur.