In re Larry Eugene WALKUP

and

Conni Laverne Walkup f/d/b/a Willow Tree Inn, Debtors.

Bankruptcy No. 82-10041.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

March 8, 1983.

Grant F. Shipley, Fort Wayne, Ind., for debtors.

James Heuer, Columbia City, Ind., for Objectors Klines & DK, Inc.

Timothy Bloom, Columbia City, Ind., for Citizens Nat. Bank.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

Debtors in this chapter 13 proceeding have submitted a plan that would reject a conditional sales contract for the sale of a restaurant to Clarke Duane Kline, Rachel E. Kline, Donald R. Kline, Mary A. Kline, and DK Inc., hereinafter the Klines. The Klines have objected to this plan, as have secured creditors Fort Wayne National Bank, Home Loan and Savings Association, Citizens National Bank of Whitley County, and General Electric Credit Corporation. The Klines requested a hearing on valuation of the property. A hearing was held on June 30, 1982, to consider both the objections to the plan and to hear testimony on the valuation of the property. It was agreed that the proposed plan will be withdrawn to be amended when the valuation question is settled. At the close of the hearing, debtors expressed concern that the valuation matter be determined as soon as possible, but requested fifteen days to file a brief. This request was granted, with time given to the Klines to file a reply; when no brief had been filed by debtors by October 4, the Klines filed theirs, and debtors filed a brief on October 15. On October 18, 1982, then, the matter was taken under advisement.

Debtors, the Walkups, bought the property in question, land of just under an acre with an old school building converted to a restaurant on it, in 1978 for $33,000. It is mortgaged to the Citizens National Bank of Whitley County. The Walkups testified that they had spent about $18,000 in improving it. In 1980 the gross earnings of the restaurant was $195,662. Neither of the Walkups could testify as to its earnings in more recent years; at the hearing they said they could not remember, and had no evidence of its earnings beyond 1980. In October, 1980, they decided that they wanted to sell it. A realtor, Gregory Fahl, listed it for sale at $105,000. At the hearing, Mr. Fahl agreed that that price was highly inflated and unrealistic. After it had been on the market for some months with no interest shown by buyers, the price was lowered to $89,900; still no buyers appeared, and in July, 1981, the Walkups decided to have it sold at auction. They placed a reserve price (lowest acceptable price) on the restaurant, real estate, and equipment all together of $55,000. They also offered the real estate, with restaurant, and the equipment for separate sale. At the auction, held July 28, 1981, no buyers showed interest in buying the property separately; the Klines were the highest bidders of the two who made offers, and their bid of $55,000, was accepted by the Walkups. A conditional sales contract was drawn up, agreed to, and signed by both parties (Klines and Walkups). The contract was placed in evidence at the hearing. The Klines paid $20,000 down and undertook monthly payments of $511 until the full price would be paid. The contract also states that "the purchase price shall include the items of equipment listed on Exhibit A which is attached to this contract." Conditional Sales Contract, p. 2. At the hearing the Klines testified that not all of the listed equipment on Exhibit A was in the restaurant. The Klines then cleaned up, repaired and redecorated the restaurant. Besides their labor they put $10,000 into these efforts. They retained the sign and the name the Walkups had used, with the Walkups' consent: "The Willow Tree Inn." They reopened for business in August 1981, and have been operating it ever since, making their payments under the contract regularly.

Five months later, the Walkups filed a voluntary chapter 13 petition in bankruptcy. Claiming that the selling price of the restaurant had been too low, they presented this court with a plan that proposed to reject the conditional sales contract with the Klines, withdraw all the restaurant equipment from the sale, put a value of $24,000 on the equipment and a value of $51,000 on the restaurant itself, and distribute security interests in the equipment (title but not possession) to some of their creditors. The plan would have depended upon the Klines' continuing to operate the restaurant under those circumstances, which the Klines understandably stated they would not wish to do.

■ Before reaching the valuation question, it should be noted that such a plan would be not only inequitable but impractical. Section 356 does authorize the rejection of some executory contracts by a Trustee; but in the case of a land sale contract, such as the one here, the vendees are protected by § 365(i): they may elect to remain in possession, continue making their payments under the contract, and the trustee then must give them the title. 11 U.S.C.A. § 365(i). See also McCannon v. Marston, 679 F.2d 13 (3rd Cir.1982). When rejection of a contract is attempted by debtors in a chapter 13 plan, "The provisions of section 365 determine the legal consequences of the assumption or rejection of an executory contract." 5 Collier on Bankruptcy, ¶ 1322.01(G)(ii). The intent of Congress in allowing assumption or rejection of executory contracts was to protect the debtor as vendee or lessee of a contract they were unable to carry out. Section 365(i) and (j) "were passed to give nondebtor vendees the protection of mortgagors ... to prevent harm which had occurred under prior law to non-debtor vendees. They accomplish this purpose, where the vendee is in possession, by allowing him to stay, continue payments, and receive title." In re Booth, 19 B.R. 53, 62 (Bkrtcy.D.Utah 1982). See also the discussion at 54–57 therein. This section of the Code was meant as a shield, not a sword. As one commentator stated on the economic consequences of rejection, "the nondebtor vendee should not be 'used as a resource by the trustee to increase the bankrupt's estate.'" Id. at 56. A plan depending upon rejection by the vendor of a land sales contract, thus cannot stand without the consent of the vendees, the equitable owners under Indiana law. See e.g. Skendzel v. Marshall, 261 Ind. 226, 301 N.E.2d 641 (1973).

■ The valuation of the restaurant equipment at $24,000 was not supported by the testimony at the hearing. An expert for the Klines testified that the maximum value of that equipment would be $15,000; the expert called by the Walkups put a sale value of $17,000 on it, but admitted that he had not inspected the equipment in question since he had sold it to the Walkups some years earlier. The Code says that valuation "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C.A. § 506 (West 1979). Only the sale price should be considered here, because if the Klines did agree to a rejection of the sales contract, they have said they would not continue to operate the restaurant.

As for the value of the restaurant and real estate, the Walkups proposed in their October 15 brief a figure of $51,000; at the hearing, Mrs. Walkup testified that in her opinion it should be worth $45,000; but any outside support for these figures was limited to putting into evidence the original offer of the property at $150,000, a figure Mr. Fahl had admitted was unrealistic. "A mere offer to buy or sell property is ... incompetent to prove the market value of property because the asking price is only the opinion of one who is not bound by his statement." State v. Lincoln Memory Gardens, Inc., 242 Ind. 206, 177 N.E.2d 655, 658 (Ind.1961). Actual sales are the best evidence. Here the actual sale, between willing buyers and willing sellers, was for the price of $55,000. It had been set by the sellers and accepted by the buyers. As for the inventory, it was sold to the Klines at the time of the sale of the restaurant, in July 1981, for $950, and has since been

replaced. No value can be assigned to it. The court finds that upon all the evidence presented, and for the purpose of any chapter 13 plan involving it, the real estate, including the building and fixtures comprising the Willow Tree Inn, cannot be assigned a value above $33,000.

SO ORDERED.