The plaintiffs raise various challenges to judgments of the Superior Court entered in an eminent domain action. We discern in the plaintiffs' various claims of error no cause to disturb the judgment, and affirm.
Background. The plaintiffs, in various combinations, owned three contiguous parcels of land in Mansfield at 760, 780, and 784 South Main Street, comprising 3.24 acres total.
On June 19, 2008, the Commonwealth effected a taking of all three parcels to build an access ramp to Interstate Route 495. As of that date, there was one house on each parcel, and the plaintiffs and their relatives lived in the houses. The Commonwealth, pursuant to G. L. c. 79, § 8A, tendered pro tanto awards to the plaintiffs: $348,000 for 760 South Main Street, $310,000 for 780 South Main Street, and $800,000 for 784 South Main Street.
After a jury trial, in which the jury heard competing expert testimony concerning the values of the properties, the jury largely adopted the opinion of values presented by the defendants' expert, which were lower than the pro tanto payments they previously had received.[4] Judgments entered for the defendants, and the plaintiffs were ordered to pay the difference between these values and the pro tanto awards.
Discussion. Judgment notwithstanding the verdict. The plaintiffs first contend that the trial judge erred in denying their postjudgment motion for judgment notwithstanding the verdict. "[N]ullifying a jury verdict is a matter for the utmost judicial circumspection" (quotation omitted). Reading Co-Op. Bank v. Suffolk Constr. Co., 464 Mass. 543, 557 (2013). A motion for judgment notwithstanding the verdict must be denied if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor" of the nonmoving party. Selmark Assocs. v. Ehrlich, 467 Mass. 525, 539 (2014), quoting Bank v. Thermo Elemental Inc., 451 Mass. 638, 651 (2008). When the moving party bears the burden of proof, the motion may only be granted where that party "has established his case by evidence that the jury would not be at liberty to disbelieve." Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 166 (1999), quoting Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 499 (10th Cir. 1984). Upon our review of the record, we conclude that it contains sufficient evidence to support the verdicts.
"Where property is taken by eminent domain, the landowner is entitled to the fair market value of the property taken .... The fair market value of the property taken is the highest price that a hypothetical arm's-length willing buyer would pay to a hypothetical willing seller in a free and open market, based on the highest and best use of the property." Boston Edison Co. v. Massachusetts Water Resources Auth., 459 Mass. 724, 731 (2011). The highest and best use of property may be a "potential use" if the use is "reasonably likely in the foreseeable future." Id. However, "possible uses that are unduly speculative or conjectural" must "be excluded from the calculation." Skyline Homes, Inc. v. Commonwealth, 362 Mass. 684, 686 (1972). Potential use evidence must be "sufficiently imminent to be taken into account by a reasonable prospective buyer in determining a property's price." Boston Edison Co., 459 Mass. at 733.
Reviewing the trial evidence in the light most favorable to the defendants, there was ample evidence for a reasonable jury to conclude that the amount awarded to the plaintiffs was the fair market value of the property. The defendants' expert appraiser testified that the highest and best use of the plaintiffs' land was residential and assigned estimated values on that basis. This evidence was sufficient for a reasonable jury to conclude that the highest and best use of the property was residential and to adopt values based on such use.
The plaintiffs contend that they were entitled to judgment notwithstanding the verdict because their assertion that the highest and best use of the property was for commercial retail purposes was "inescapable." The plaintiffs' expert appraiser testified that the highest and best use of the property was commercial retail based on a hypothetical assemblage combining their properties with the neighboring Maloon property and the extraordinary assumption of gaining access through another adjacent property at 10 Reservoir Street. A reasonable jury were at liberty to disbelieve that opinion and valuation for several reasons. First, the parties stipulated that access to the plaintiffs' property from South Main Street was permanently restricted to residential. The property was being used for residential purposes despite being zoned industrial. Gaining access through the 10 Reservoir Street property was necessary for any commercial use of the plaintiffs' property. A reasonable jury could have found that gaining access over 10 Reservoir Street was not sufficiently imminent nor reasonably likely, or that it was unduly speculative.[5]
Other issues. We turn briefly to the plaintiffs' other claims of error. The plaintiffs contend that the trial judge improperly excluded an electronic mail message (e-mail) from a Department of Transportation official to a member of the Clemmey family. The e-mail was properly excluded as a compromise offer, as it summarized the parties' arguments and identified potential dispute resolutions. See Mass. G. Evid. § 408 (2018). Moreover, the e-mail was not a factual admission as the plaintiffs allege; it merely opined that the property would be worth more for a nonresidential use (a proposition that was not in dispute).
The plaintiffs further contend that the trial judge erred by requiring them to redact the amounts from two unaccepted offers to buy the property before admitting the offers into evidence. The argument is waived because the plaintiffs asserted that the relevance of the offers was not for their values alone, but rather for "briskness of demand," the trial judge allowed the redacted offers on that theory of relevance, and the plaintiffs did not object to that ruling. See Commonwealth v. Grady, 474 Mass. 715, 720 (2016).[6]
The plaintiffs also assign error to the trial judge's ruling that Ralph Maloon could not testify that he was acting as agent for Gale Maloon, his former wife. Ralph testified about buying and living at 778 South Main Street, renting and managing the property, the condition of the property at the time of the taking, the couple's separation and divorce, and the development plans he prepared for the Clemmeys. The plaintiffs sought to introduce Ralph's testimony that Gale authorized him to prepare the development plans and to sell the Maloon property for $200,000 in 1995. "A husband may of course act as agent for his wife in the management and disposition of her property.... But where ... the agency is disputed, proof of the marital relation alone is not sufficient to establish that he was her agent in negotiating the sale of her land." Gordon v. O'Brien, 320 Mass. 739, 741 (1947). See id. at 742-743 (determining that hearsay could not be used to prove husband's agency). The only proffered evidence supporting Ralph's agency was his own hearsay testimony; accordingly, it was properly excluded.[7]
The plaintiffs next contend that it was prejudicial for the trial judge to decline to specifically instruct on assemblage and zoning. However, Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974), provides that "[n]o party may assign as error ... the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."
Here, despite having requested the instruction, the plaintiffs did not object when the trial judge declined to give their assemblage instruction, nor did they object before the jury began deliberating. See Rotkiewicz v. Sadowsky, 431 Mass. 748, 750-752 (2000).[8] The plaintiffs also did not object to the trial judge's decision not to give their requested instructions on zoning. Therefore, the plaintiffs' argument regarding jury instructions is waived.[9]
Finally, the plaintiffs contend that the verdict slip was "confusing" and "inconsistent with the case law." Again, the argument is waived by the absence of objection.[10] See Shafnacker v. Raymond James & Assocs., Inc., 425 Mass. 724, 731 (1997).
Judgments affirmed.
Order entered September 9, 2016, denying postjudgment relief affirmed.

The plaintiffs' expert appraiser testified that the plaintiffs' properties would be worth $1.95 million total as retail property if they were assembled with the Maloon property for shape and if they gained some sort of access over 10 Reservoir Street. The defendants' expert appraiser, in contrast, stated that the highest and best use of the properties was residential, and found that the fair market value of 760 South Main Street was $342,000, the fair market value of 780 South Main Street was $210,000, and the fair market value of 784 South Main Street was $525,000. The jury valued 784 South Main Street at $520,000, but valued the other two properties identically with the defendants' expert appraiser's values.

It was reasonable for a jury to believe that gaining such access was not reasonably likely or financially feasible because the asking price for 10 Reservoir Street was so high, there was a potential imbalance in bargaining power between the owner of 10 Reservoir Street and any owner of the plaintiffs' properties, and 10 Reservoir Street was much larger than the plaintiffs' combined properties, making a purchase of 10 Reservoir Street disproportionate or impracticable as an antecedent to development of the plaintiffs' properties for commercial use.

In any event, Peoples Sav. Bank v. Assessors of Chicopee, 384 Mass. 808 (1981), explained that mere offers to buy or sell property are "incompetent to prove the market value of property because the asking price is only the opinion of one who is not bound by his statement, and is too unreliable to be accepted as a correct test of value." Id. at 808, quoting State v. Lincoln Memory Gardens, Inc., 242 Ind. 206, 213 (1961). The plaintiffs assert that Peoples Sav. Bank has been "implicitly abrogated" by Commonwealth v. Lanigan, 419 Mass. 15 (1994). It has not. But even if the plaintiffs were correct, we are bound to follow Supreme Judicial Court precedent. See Deloury v. Deloury, 22 Mass. App. Ct. 611, 616 (1986).

Moreover, even if Ralph had been permitted to testify that he acted as agent for Gale, the potential for assemblage based on a 1995 sale price is irrelevant to the plaintiffs' property values at the time of the taking in 2008.

The plaintiffs argue that their rights are saved without objection simply because the judge refused to give their requested instructions, and they cite criminal cases to support this argument. However, the language of rule 51 (b) is clear, and "[a] party who fails to comply with that rule thereby forfeits his right to complain on appeal of the giving or omission of an instruction." Narkin v. Springfield, 5 Mass. App. Ct. 489, 491 (1977).

However, even if the argument is not waived, trial judges have wide latitude in framing the language for jury instructions and the instructions here "adequately explain[ed]" the applicable law. Kelly v. Foxboro Realty Assocs., LLC, 454 Mass. 306, 316 (2009). The plaintiffs agreed that the other instructions "covered" the concept of assemblage, and no evidence of merger was admitted during the trial.